# COMMONWEALTH OF VIRGINIA



SPOTSYLVANIA CIRCUIT COURT
Civil Division
POB 96/9107 JUDICIAL CENTER LANE
SPOTSYLVANIA VA 22553
(540) 507-7614

Proof of Service

Virginia:
In the SPOTSYLVANIA CIRCUIT COURT

Case number: 177CL12000894-00
Service number: 001
Service filed: August 29, 2012
Judge:

Served by: OUT OF STATE
Style of case: RACETIME INVESTMENTS; LLC vs ROBERT J. MOSER
Service on: ROBERT J MOSER
      63 PUTNAM STREET
      SARATOGA SPRINGS NY 12866

Attorney: GARDNER, MARK S
      540-582-6333

Instructions:

Returns shall be made hereon, showing service of Summons issued Wednesday, September 26, 2012 with a copy of the Complaint filed Wednesday, August 29, 2012 attached.   Returns shall also be made hereon, showing service of First Set of Interrogatories and First Request for Production of Documents attached.
Hearing date  :
Service issued: Wednesday, September 26, 2012

For Sheriff Use Only

**EXHIBIT**

tabbies

*A*

# COMMONWEALTH OF VIRGINIA



### SPOTSYLVANIA CIRCUIT COURT
Civil Division
POB 96/9107 JUDICIAL CENTER LANE
SPOTSYLVANIA  VA  22553
(540) 507-7614

Summons

To: ROBERT J MOSER
    63 PUTNAM STREET
    SARATOGA SPRINGS NY 12866

Case No. 177CL12000894-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Wednesday, September 26, 2012

Clerk of Court:  CHRISTALYN MITCHELL JETT

by _____
           [CLERK/DEPUTY CLERK]

Instructions:

Hearing Official:

Attorney's name:    GARDNER, MARK S
                 540-582-6333

**VIRGINIA:**

### IN THE CIRCUIT COURT OF THE COUNTY OF SPOTSYLVANIA

| | |
|---|---|
| **RACETIME INVESTMENTS, LLC** <br> 1001 East Telecom Drive <br> Boca Raton, Florida 33431 <br><br> Individually and Derivatively <br><br> Plaintiff, <br><br><br> v. <br><br> **ROBERT J. MOSER** <br> 63 Putnam Street <br> Saratoga Springs, New York 12866 <br><br> **ROBERT C. MORGAN** <br> 63 Putnam Street <br> Saratoga Springs, New York 12866 <br><br> **MORGAN RV RESORTS LLC** <br> 1170 Pittsford Victor Road <br> Pittsford, New York 14534 <br><br> and <br><br> **RACETIME RV RESORTS, LLC** <br> 63 Putnam Street <br> Saratoga Springs, New York 12866 <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> Case No. CL12-894 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> RECEIVED + FILED <br><br> AUG 29 2012 <br><br> SPOTSYLVANIA CIRCUIT COURT |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Racetime Investments, LLC ("**RTI**" or "**Plaintiff**"), individually and derivatively on behalf of Racetime RV Resorts, LLC, by its undersigned counsel, files this Complaint against Defendants, Robert J. Moser ("**Mr. Moser**"), Robert C. Morgan ("**Mr.**

Morgan"), and Morgan RV Resorts LLC ("**Morgan**"), (collectively, "**Defendants**"), and Nominal Defendant, Racetime RV Resorts, LLC,[1] and states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over Defendants pursuant to Va. Code Ann., §8.01-328.1 because Defendants regularly conduct business and derive income in Virginia and caused tortious injury to Plaintiff in this State as alleged herein.

2.      Venue is proper in this Court pursuant to Va. Code Ann, § 8.01-261 because the financial injury to Plaintiff was suffered in this forum and a portion of Defendants' wrongful conduct took place in this forum.

## PARTIES

3.      Plaintiff, RTI, is a Florida limited liability company, with its principal place of business in Boca Raton, Florida, that regularly conducts business in Virginia. RTI is a citizen of Delaware.

4.      Defendant Mr. Moser is an individual residing in New York who regularly transacts business in Virginia.

5.      Defendant Mr. Morgan is an individual residing in New York who regularly transacts business in Virginia.

6.      Defendant Morgan is a New York limited liability company, with its principal place of business in Pittsford, New York, that regularly transacts business in Virginia, including

---

[1] Racetime RV Resorts, LLC is a nominal Defendant because it is a necessary party to the derivative causes of action. See *Michael E. Siska Revocable Trust ex rel. Siska v. Milestone Dev., LLC*, 282 Va. 169, 181, 715 S.E.2d 21, 27 (2011) ("A limited liability company that is the subject of a derivative action must be a party to the suit.").

through Endless Caverns, LLC. Defendants Mr. Morgan and Mr. Moser have a controlling interest in Morgan. Upon information and belief Morgan is a citizen of New York.

7.    Nominal Defendant Racetime RV Resorts, LLC, is a Delaware limited liability company with its principal place of business in Saratoga Springs, New York. The members of Racetime RV Resorts, LLC are citizens of Delaware and New York.

## FACTS

### The Joint Venture

8.    In or about 2009, Larry D. Silver ("**Mr. Silver**"), entered into discussions with the National Association for Stock Car Auto Racing, Inc. ("**NASCAR**") regarding a potential licensing agreement for NASCAR-branded RV parks.

9.    After coming to an understanding with NASCAR, Mr. Silver approached Mr. Morgan and Mr. Moser regarding the possibility of entering into a joint venture for the purpose of franchising NASCAR-branded RV parks through the licensing agreement that Mr. Silver was negotiating with NASCAR.

10.    As a result of these discussions, in or about October 2009, RTI and Morgan, acting through Mr. Morgan and Mr. Moser, entered into a joint venture and formed an entity known as Racetime RV Resorts, LLC (the "**JV**").[2]

11.    The JV entered into a licensing agreement with NASCAR and the JV planned to franchise "NASCAR RV Resorts" which would be NASCAR-branded and themed RV parks.

12.    The JV's source of revenue would be from the sale of NASCAR RV Resort franchises and royalties, including from the sale of NASCAR merchandise at NASCAR RV Resorts, from those franchises under franchise agreements.

---

[2] Morgan invested in the JV through a shell entity known as Morgan Racetime LLC.

13.     The JV planned to franchise NASCAR RV Resorts to both Morgan related entities as well as third parties. The Morgan entities and the third parties would pay franchise fees and royalties to the JV who, in turn, would pay a licensing fee to NASCAR.

**RTI Funds the JV Based on Misrepresentations by Morgan**

14.     At the request of Defendants, RTI contributed capital to the JV, consisting of cash payments and the payment of legal fees on behalf of the JV, totaling One Million Six Hundred Nineteen Thousand One Hundred Eighty-Two Dollars ($1,619,182).

15.     RTI's agreement to contribute capital was contingent upon Morgan's express agreement, through Mr. Morgan and Mr. Moser, to contribute an equal amount of capital to the JV and to convert at least thirteen Morgan RV parks to NASCAR-branded parks that would pay franchise fees and royalties to the JV; however, no such capital contribution ever occurred and Morgan has failed to pay franchise fees and royalties to the JV.

16.     Indeed, at the time that Morgan, through Mr. Morgan and Mr. Moser, falsely stated to Mr. Silver that Morgan would contribute capital and convert RV Parks, Defendants had no intention of ever funding the investment or paying full franchise fees and royalties for Morgan RV parks that would be converted to NASCAR RV Resorts.

17.     Instead, it was Defendants' intent to cause RTI to invest funds into the JV so that Defendants could use that money for other Morgan related entities including other RV parks that were in need of repairs and renovations.

18.     Defendants also intended to use the NASCAR brand to obtain revenue from other NASCAR affiliated entities for its RV parks and other entities without paying full franchise fees and royalties to the JV.

4

19.     In order to conceal its plan, Defendants fraudulently made entries in the JV's books and records to indicate that Morgan had contributed an equal share of capital.

**Morgan Steals RTI's Capital Contributions and Defrauds RTI**

20.     Since at least as early as 2010, in accordance with its deceptive scheme, Defendants methodically and deliberately utilized JV funds – contributed solely by RTI – for the benefit of Morgan and its entities.

21.     For example, Defendants used JV funds to pay the salaries of Morgan employees, many of whom spent little, if any, time and effort in furtherance of the JV.

22.     Moreover, Morgan utilized the funds contributed by RTI to renovate and remodel Morgan RV parks that had no relation to the JV and that Morgan had no intention of ever converting to NASCAR-branded parks.

23.     In addition, Defendants spent JV funds to "convert" some of Morgan RV parks, including Endless Caverns located in New Market, Virginia, to NASCAR RV Resorts; however, Morgan has failed to pay full franchise fees and royalties to the JV.

24.     The funds expended to change the already existing Morgan RV parks to NASCAR RV Resorts were spent predominantly on repairs and improvements that had nothing to do with conversions to NASCAR parks, but instead were general maintenance, repairs, and improvements.

25.     Defendants fraudulently obtained Mr. Silver's consent to the renovation of its RV parks at the JV's expense. Defendants made material misrepresentations that repairs and upgrades of its parks were required to enable those parks to become NASCAR-themed parks. At the time the misrepresentations were made, Defendants knew the repairs were not necessary to

5

convert the parks and had no intent of ever paying the JV licensing fees or royalties for the Morgan NASCAR-themed parks.

26.     In fact, despite extensive renovations to Morgan RV parks – at the expense of the JV – to date the NASCAR-themed RV parks do not pay full franchise fees or royalties to the JV.

27.     In other words, Defendants converted RTI's capital contributions from the JV for the benefit of Morgan and its other RV parks to the detriment of the JV and RTI.

**Morgan Uses the NASCAR Brand Without Paying Licensing Fees**

28.     Morgan has used the NASCAR brand, which is licensed at the expense of the JV, to advertise for its RV Resorts without compensating the JV.     The website www.nascarrvresorts.com (the "**NASCAR RV Website**") lists ten RV parks that are supposedly NASCAR RV Resorts.  All of these ten parks are Morgan RV parks.  When you click to make a reservation at any of these parks you are diverted to Morgan's website, www.morganrvresorts.com (the "**Morgan Website**").  A true and correct copy of the list of NASCAR RV Resorts posted on the NASCAR RV Website is attached hereto as Exhibit A and incorporated herein by reference.

29.     Moreover, the NASCAR RV Resorts logo appears on the Morgan Website even though Morgan has not paid the JV a franchise fee for the use of the logo.  It is notable that the NASCAR RV Website contains the following disclosure: "The NASCAR RV Resorts™ logo and word mark are used under license by the National Association for Stock Car Auto Racing, Inc., and Racetime RV Resorts, LLC;" however, despite using the NASCAR brand and logo on the Morgan Website, no such disclosure appears on the Morgan Website.  True and correct copies of pages from the Morgan Website utilizing the NASCAR RV Resorts mark are attached hereto as Exhibit B and incorporated herein by reference.

6

30. In other words, Morgan is utilizing the NASCAR RV Website and the NASCAR mark, licensed from NASCAR by the JV, to divert customers to the Morgan Website without paying franchise fees or royalties to the JV.

**Morgan Attempted to Conceal its Taking of RTI's Capital Contributions**

31. From the beginning of the JV, Defendants insisted upon having complete control over the books and records of the JV.

32. In fact, when RTI requested access to the books, Defendants repeatedly denied the requests.

33. It was only after RTI indicated its intent to take legal action to obtain access to the financial records, that Defendants finally relented and provided RTI limited access to the books and records of the JV. The limited information provided revealed the conversion of funds by Defendants. Through discovery, RTI expects to find further malfeasance by Defendants.

34. To date, Defendants have continued to refuse RTI's requests for detailed financial information. For example, despite repeated demands, Defendants have refused to provide: a detailed general ledger (instead it provided a general ledger with "summary entries" of cash disbursements), back-up information, including invoices, for alleged JV expenses, information relating to adjusting journal entries, or a check register showing disbursements of JV funds.

35. Although, RTI was able to obtain some additional information from the auditors of the JV, including a check register for a limited period of time, many financial questions remain unanswered as result of Defendants' deliberate concealment of JV financial information.

36. Based on the very limited financial information obtained to date, Defendants have used questionable accounting practices to avoid detection of their malfeasance. For example, a large portion of alleged capital contributions by Morgan are reflected on the JV's books as a

7

"Members Contribution Receivable" as of December 31, 2010; however, despite repeated requests, Morgan has been unable to provide supporting documentation showing that this "contribution" was ever actually made to the JV.

37.     This "contribution receivable" was formerly improperly booked as "Start-Up-Expenses" which appear to be JV funds (contributed by RTI) utilized for improvements to Morgan RV parks.  The JV's auditors told Defendants that booking improvements to Morgan parks as "startup expenses" for the JV was not acceptable because they were improvements to assets owned by Morgan, not the JV.   Accordingly, the expenses were reclassified as a "contribution receivable;" but it is unclear, based on the limited financial information provided by Defendants, whether this "receivable" has been repaid.  It is also unclear how Morgan's repayment of JV funds expended to improve Morgan's assets constitutes a capital contribution by Morgan to the JV.

38.     In a further effort to cover up its theft and fraud, Defendants attempted to purchase the silence of Morgan's former Chief Financial and Chief Operating Officer, Ron Mnieckowski (**"Mr. Mnieckowski"**).   Amidst the dispute between RTI and Defendants regarding the taking of JV funds, Morgan terminated Mr. Mnieckowski and paid him a significant severance that was contingent upon his agreement to be bound by a broad confidentiality agreement.

39.     As the CFO and COO of Morgan, Mr. Mnieckowski certainly has detailed information about the taking of JV funds for Defendants' benefit.  Indeed, according to a chart prepared by Mr. Mnieckowski, Morgan allocated twenty-eight percent (28%) of his $200,000 annual salary to the JV.

8

40. To date, Mr. Mnieckowski has invoked the confidentiality agreement and refused to provide detailed information to RTI regarding the taking of funds by Defendants.

**Defendants Divert JV Opportunities**

41. In accordance with the JV's licensing agreement with NASCAR, the JV is supposed to receive the benefit of doing business with NASCAR sponsors, such as Lowes.

42. As a result of the JV, upon information and belief, Morgan entered into agreements with Lowes, including a Purchase and Rebate Agreement. Upon information and belief, as a result of Morgan's relationship with Lowes, it has received at least $2,000,000.

43. The benefit of any agreement with Lowes, or any other NASCAR sponsor, should go to the JV; however, Defendants have diverted those opportunities for Morgan's own benefit.

## DERIVATIVE ALLEGATIONS

44. As result of Defendants' taking of RTI's capital contributions and diversion of JV business opportunities, RTI has suffered direct financial injury. To the extent the Court determines that any injuries are deemed to have been suffered by the JV, RTI asserts its claims described herein, in the alternative, derivatively on behalf of the JV.

45. Demand upon the JV to bring the claims asserted herein would be futile because Mr. Morgan and Mr. Moser control both Morgan and the JV.

## COUNT I
### (Conversion)

46. Plaintiff incorporates by reference the allegations contained in each of the other paragraphs of this Complaint as if fully set forth in this Count.

47. Defendants wrongfully exercised or assumed authority over RTI's capital contributions to the JV; thereby depriving RTI of its funds.

9

48.   Defendants' taking of the funds was inconsistent with RTI's right to the funds and denied RTI its rights to the funds.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in the amount of approximately One Million Six Hundred Nineteen Thousand One Hundred Eighty-Two Dollars ($1,619,182), with the exact amount to be determined at trial, plus pre- and post-judgment, punitive damages of Ten Million Dollars ($10,000,000) and such other and further relief as the Court may deem just and proper.

## COUNT II
### (Unjust Enrichment)

49.   Plaintiff incorporates by reference the allegations contained in each of the other paragraphs of this Complaint as if fully set forth in this Count.

50.   Defendants' taking RTI's capital investment conferred a benefit upon Defendants of which Defendants were aware.

51.   Retention of the benefit of the funds taken by Defendants would be inequitable under the circumstances because RTI was deprived of its funds.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in the amount of approximately One Million Six Hundred Nineteen Thousand One Hundred Eighty-Two Dollars ($1,619,182), with the exact amount to be determined at trial, plus pre- and post-judgment, punitive damages of Ten Million Dollars ($10,000,000) and such other and further relief as the Court may deem just and proper.

## COUNT III
### (Fraud—Intentional Misrepresentation)

52.   Plaintiff incorporates by reference the allegations contained in each of the other paragraphs of this Complaint as if fully set forth in this Count.

10

53.     Defendants made false representations to RTI regarding its intent to contribute capital to the JV, convert Morgan RV parks to NASCAR-branded parks, and obtain franchise agreements for the JV's benefit.   When Mr. Morgan and Mr. Moser specifically stated that Morgan would match RTI's capital contribution and convert Morgan RV parks to NASCAR parks, Defendants had no intention of ever contributing capital to the JV or paying full franchise fees to the JV.

54.     Defendants made these misrepresentations knowingly and intentionally with the intent to mislead RTI and cause RTI to contribute capital to the JV.

55.     RTI reasonably relied upon the misrepresentation when it contributed capital to the JV.

56.     RTI suffered actual financial damages a result because Defendants stole RTI's funds from the JV.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in the amount of approximately One Million Six Hundred Nineteen Thousand One Hundred Eighty-Two Dollars ($1,619,182), with the exact amount to be determined at trial, plus pre- and post-judgment, punitive damages of Ten Million Dollars ($10,000,000) and such other and further relief as the Court may deem just and proper.

## COUNT IV
### (Unjust Enrichment)
### Derivatively on behalf of Racetime RV Resorts, LLC

57.     Plaintiff incorporates by reference the allegations contained in each of the other paragraphs of this Complaint as if fully set forth in this Count.

58.     Morgan is using the JV's mark "NASCAR RV Resorts" which confers a benefit upon Morgan of which Morgan is aware.

11

59.    Retention of the benefit of Morgan's use of the mark would be inequitable under the circumstances because the JV is entitled to payment for the use of its mark.

WHEREFORE, Plaintiff demands judgment against Defendant Morgan for compensatory damages of at least Five Million Dollars ($5,000,000), with the exact amount to be determined at trial, plus pre- and post-judgment, and such other and further relief as the Court may deem just and proper.

## COUNT V
### (Breach of Contract)
### Derivatively on behalf of Racetime RV Resorts, LLC

60.    Plaintiff incorporates by reference the allegations contained in each of the other paragraphs of this Complaint as if fully set forth in this Count.

61.    Upon information and belief, the JV and Morgan entered into franchise agreement(s) for the use of the JV's mark "NASCAR RV Resorts" by Morgan.

62.    Morgan materially breached its contractual obligations to the JV by failing to pay franchise fees and royalties to the JV.

WHEREFORE, Plaintiff demands judgment against Defendant Morgan for compensatory damages of at least Five Million Dollars ($5,000,000), with the exact amount to be determined at trial, plus pre- and post-judgment, and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all matters triable by jury.

12

Respectfully submitted,

**RACETIME INVESTMENTS, LLC**

By: _____
                 Mark S. Gardner


Mark S. Gardner, VSB #17907
Gardner, Maupin, Sutton & Haney, P.C.
P. O. Box 129
Spotsylvania, Virginia  22553
(540) 582-6333
(540) 582-2134

Thomas M. Wood, IV (*pro hac vice* pending)
Brian M. Boyle (*pro hac vice* pending)
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland  21202
(410) 332-8523

Counsel for Plaintiff

A COPY TESTE:
Christalyn M. Jett, Clerk
By: _____
                 Deputy Clerk







## Welcome To NASCAR RV Resorts

Featuring live satellite coverage of NASCAR race events on oversized jumbo screens, a tailgating atmosphere and family-friendly activities, NASCAR RV Resorts delivers an at-the-track experience for race fans of all ages. Guests will enjoy unique pre and post-race coverage, race day BBQ's, special events such as driver appearances, and contests to win NASCAR Officially Licensed Prizes and Merchandise. Come and experience the action at one of our NASCAR RV Resorts!

| Wagon Wheel Recreation Destination (NASCAR) 3 Old Orchard Rd., Old Orchard Beach, ME - 04064 Reservations: 866-617-8464 Phone: 207-931-0150 | Wild Acres Recreation Destination (NASCAR) 179 Saco Ave., Old Orchard Beach, ME - 04064 Reservations: 866-617-8464 Phone: 207-934-2535 | Lake Michigan Recreation Destination (NASCAR) 10990 US 31 North, Grand Haven, MI - 49417 Reservations: 866-617-8464 Phone: 616-842-5395 |
| --- | --- | --- |
| Stonebridge Recreation Destination (NASCAR) 1768 Bear Rd Highway 12, Maggie Valley, NC - 28751 Reservations: 866-617-8464 Phone: 828-926-1704 | Mays Landing Recreation Destination (NASCAR) 1079 12th Ave, Mays Landing, NJ - 08330 Reservations: 866-617-8464 Phone: 609-476-2811 | Adirondack Gateway Recreation Destination (NASCAR) 627 Fonterville Rd., Gloversville, NY - 12851 Reservations: 866-617-8464 Phone: 518-792-0405 |
| Indian Creek Recreation Destination (NASCAR) 4710 Lake Road East, Geneva on the Lake, OH - 44041 Reservations: 866-617-8464 Phone: 440-466-8191 | Endless Caverns Recreation Destination (NASCAR) 1800 Endless Caverns Rd., New Market, VA - 27844 Reservations: 866-617-8464 Phone: 540-896-2283 | Westward Ho Recreation Destination (NASCAR) W5456 Di-dian Rd, Glenbeulah, WI - 53023 Reservations: 866-617-8464 Phone: 920-525-3407 |

Indiana Beach Recreation Destination
(NASCAR)
5224 E. Indiana Beach,
Monticello, IN 47960

Reservations: 866-817-8464

Phone: 574-583-4141

||||||

The NASCAR RV Resorts™ logo and word mark are used under license
by the National Association for Stock Car Auto Racing, Inc., and Racetime RV Resorts, LLC